**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-40205

(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT JOE KIMBLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Eastern District of Texas
(4:94 CR 505)
_____
September 20, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Robert Joe Kimble and ten co-defendants were charged in a thirteen-count indictment with conspiracy to possess with the intent to distribute cocaine base, in violation of 21 U.S.C. § 846 and with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Kimble plead guilty to Count 7, possession with intent to distribute less than five grams of

_____

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

crack cocaine.  Kimble appeals his sentence and we affirm.

I

During a five month undercover operation at Kimble's home agents made one hundred and six purchases of crack cocaine. Undercover officer Paul Cogwell purchased crack cocaine directly from Kimble on two occasions.  Cogwell also witnessed Kimble selling crack to other customers, participating in the pooling of money to purchase drugs and sharing duties at the crack house. Kimble lived at the crack house for ten to twelve years before the investigation began and continued to live there during the investigation, except for brief periods when he was in jail on unrelated charges.  Kimble was arrested and charged as a result of the investigation.  Kimble plead guilty to a single count of possession with intent to distribute less than five grams of crack cocaine.  The district court sentenced Kimble to 108 months in prison, a three-year term of supervised release, and a $10,000 fine.[1]

Kimble appeals his sentence, alleging that (1) the district court erred in determining the quantity of drugs attributable to him through the conspiracy for purposes of determining his base level offense under the guidelines; and (2) the sentencing guidelines violate his due process, equal protection, and Eighth

---

[1]     Under the 1994 Sentencing Guidelines, the district court determined Kimble's base offense level at 32 and found that Kimble was responsible for more than 50 but less than 150 grams of cocaine.  Kimble's acceptance of responsibility reduced his base offense level to 29.  Kimble's level III criminal history and 29 base offense level produced a guideline range of 108 to 135 months of imprisonment.

Amendment rights.

## II

Kimble contends that the district court improperly determined the quantity of drugs that can be attributed to him to determine his base offense level.[2] The quantity of drugs reasonably foreseeable to a defendant is a question of fact which we review for clear error.[3] *United States v. Pofahl*, 990 F.2d 1456, 1479 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 266, 126 L. Ed. 2d 218 (1993) and *cert. denied*, ___ U.S. ___, 114 S. Ct. 560, 126 L. Ed. 2d 460 (1993); *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991), *aff'd* 979 F.2d 210 (1991). Kimble claims in essence that the district court erred in determining the relevant conduct properly attributed to him under § 1B1.3(a)(1)(B) of the guidelines. "The factual findings made by a district court in its determination of a defendant's relevant conduct for sentencing purposes are subject to the 'clearly erroneous' standard of review on appeal." *United States v. McCaskey*, 9 F.3d 368, 372 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1565, 128 L. Ed. 2d 211 (1994). Under either standard of review we affirm.

Kimble contends that the district court erroneously attributed

---

[2] We will uphold the district court's sentence as long as it results from a correct application of the sentencing guidelines to factual findings that are not clearly erroneous. *Id.* "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

[3] Clear error is generally considered a more deferential standard of review than clearly erroneous. *See United States v. Tello*, 9 F.3d 1119, 1122 (5th Cir. 1993).

sales of crack cocaine to him that he could not have reasonably foreseen.[4] Kimble states that he was in prison when the undercover operation at his residence began and during the final months of the conspiracy. He argues that because he was in prison periodically he could not have foreseen his co-defendants' drug transactions; therefore, in determining the quantity of drugs that constitute his "relevant conduct" for sentencing, the district court, he contends, should have sentenced him solely based on the two sales he made to Cogwell, not sales made by his 1co-defendants.

The presentence investigation report ("PSR") detailed Cogwell's observations of Kimble pooling money with others at the crack house to purchase drugs and his sharing of duties there, in addition to Kimble's two direct sales to Cogwell.[5] In overruling Kimble's objections to the PSR, the court explicitly found that

---

[4] The offense level of a defendant convicted of a drug trafficking offense is determined by the quantity of drugs involved in the offense. U.S.S.G. § 2D1.1(a)(3). "This quantity includes both drugs with which the defendant was directly involved, and drugs that can be attributed to the defendant in a conspiracy as part of his 'relevant conduct' under § 1B1.3(a)(1)(B) of the Guidelines." *United States v. Carreon*, 11 F.3d 1225, 1230 (5th Cir. 1994). Section 1B1.3(a)(1)(B) defines relevant conduct as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. §1B1.3(a)(1)(B). To attribute conspiratorial conduct to a defendant under section 1B1.3(a)(1)(B), the court must explicitly find that the conduct was within the scope of the defendant's agreement and "reasonably foreseeable" to the defendant. *Carreon*, 11 F.3d at 1230-31 (citing *United States v. Evbuomwan*, 992 F.2d 70, 72 (5th Cir. 1993)).

[5] The district court adopted the findings of the PSR as its findings of fact. "A presentence report generally bears sufficient indicia of reliability to be considered as evidence by the district court in resolving disputed facts. A district court may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Valencia*, 44 F.3d 269 (5th Cir. 1995) (citations omitted). To the extent that a defendant's objections to the PSR contain unsworn assertions, they are not sufficiently reliable and should not be considered in making sentencing decisions. *See United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990) (quoting U.S.S.G. § 6A1.3 comment.).

there was more than fifty grams of crack cocaine encompassed in Kimble's relevant conduct.  Further the court concluded, based on the PSR, that this amount was foreseeable to Kimble and that it was sold in furtherance of the conspiracy.  Citing *United States v. Puig-Infante*,[6] the court also found that there was no evidence that Kimble had ever withdrawn or abandoned the conspiracy while he was in jail.  The court emphasized that to the contrary, there was evidence that Kimble returned to the crack house immediately after being released from jail and resumed selling drugs.

Kimble correctly points out that we have found that "relevant conduct" can only encompass conduct after a defendant has joined a conspiracy; a defendant cannot be sentenced based on his co-conspirators' activities before he joined the conspiracy. *Carreon*, 11 F.3d at 1235-36; U.S.S.G. § 1B1.3(a)(1)(B), comment. (n.2). Kimble in essence contends that his sentence encompasses drug transactions that occurred while he was in jail at the beginning of the investigation))before he claims he joined the conspiracy.  The court through its adoption of the PSR's findings, explicitly found Kimble responsible for the relevant conduct of the conspiracy from the beginning of the investigation until the end, regardless of his imprisonment.  This conclusion is adequately supported by the record and reasonable given that Kimble's family was running the drug operation from Kimble's residence of ten to twelve years. Kimble admits having sold crack cocaine from the residence and

_____

[6]      19 F.3d 929, 945 (5th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 180, 130 L. Ed. 2d 115 (1994) (stating that incarceration alone is not an affirmative act which can establish withdrawal from a conspiracy).

-5-

knowing that others, including his family members, were also selling crack cocaine. On one occasion after he was released from jail Kimble immediately returned to the crack house and began selling drugs again. In addition, Cogwell observed Kimble taking part in the conspiracy by pooling money to buy drugs and by taking turns with the other sellers at the crack house. Given these facts, it is reasonable and not clearly erroneous to conclude that Kimble was involved in the conspiracy during the entire five months of the investigation despite his occasional imprisonment.

Because the court's findings establish that it was reasonably foreseeable to Kimble that more than fifty grams of crack cocaine would be sold, and because Kimble presents no *evidence*, only unsworn assertions, to the contrary, we conclude that the court's determination of the amount of drugs attributable to Kimble as part of his relevant conduct was not clearly erroneous.

### III

Kimble also contends that his sentence violates his constitutional rights to equal protection, due process, and to be free from cruel and unusual punishment because the sentencing guidelines punish less than one gram of cocaine base as if it were the equivalent of fifty to one hundred fifty grams of cocaine. As Kimble acknowledges, these claims are foreclosed by Fifth Circuit precedent. *United States v. Cooks*, 52 F.3d 101, 105 (5th Cir. 1995) (rejecting an equal protection challenge to the guidelines); *United States v. Fisher*, 22 F.3d 574, 579 (5th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 529, 130 L. Ed. 2d 433 (1994)

-6-

(acknowledging that the court has rejected due process, equal protection, and vagueness challenges to the disparities between penalties for powdered cocaine and cocaine base and rejecting an Eighth Amendment challenge to same).[7]

IV

For the foregoing reasons, we AFFIRM the district court's sentence.

---

[7] *See also United States v. Cherry*, 50 F.3d 338, 342-44 (5th Cir. 1995) (no equal protection violation); *United States v. Butler*, 988 F.2d 537 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 413, 126 L. Ed. 2d 359 (1993) ("cocaine base" is not an unconstitutionally vague term) (citing *United States v. Thomas*, 932 F.2d 1085 (5th Cir. 1991), *cert. denied*, 502 U.S. 1038, 112 S. Ct. 887, 116 L. Ed. 2d 791 (1992)); *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992) (the crack cocaine provisions of the sentencing guidelines do not violate due process or equal protection as applied to African-Americans); *United States v. Watson*, 953 F.2d 895 (5th Cir. 1992), *cert. denied*, 504 U.S. 928, 112 S. Ct. 1989, 118 L. Ed. 2d 586 (1992).